167 A.2d 231 (1961)
William ELSTER and Ray Wolf, Plaintiffs,
v.
AMERICAN AIRLINES, INC., C. R. Smith and O. M. Mosier, Defendants.
Court of Chancery of Delaware, New Castle.
January 6, 1961.
*232 William E. Taylor, Jr., Wilmington and William E. Haudek of Pomerantz, Levy & Haudek, New York City, for plaintiffs.
Richard F. Corroon of Berl, Potter & Anderson, Wilmington, and Debevoise, Plimpton & McLean, New York City, for defendant, American Airlines, Inc.
E. N. Carpenter, II, of Richards, Layton & Finger, Wilmington, for defendants, C. R. Smith and O. M. Mosier.
MARVEL, Vice Chancellor.
On May 16, 1960, this case which is concerned with a stockholder attack on the validity of stock options granted to its employees by American Airlines, Inc. was remanded to this Court by the Supreme Court of Delaware "* * * with instructions to take such further proceedings therein as may be necessary in conformity with the opinions * * *" of the reviewing court. In its opinion of February 11, 1960 (160 A.2d 731) the Supreme Court ordered reversal of the order entered below, which had denied the motions of the individual defendant optionees for summary judgment, with instructions to enter judgment for all the individual defendants.[1] However, plaintiffs having thereafter petitioned for reargument, the 1950 section of America's option plan insofar as it involved the grant of options to its then president and vice-president was brought under renewed attack on grounds which had not been advanced in earlier stages of the case. Plaintiffs in such petition first raised the question of whether because of the alleged lack of a quorum of disinterested directors at four meetings at which the Smith and Mosier options were in some manner a part of the agendum such options were accordingly invalid, these meetings having been allegedly attended by only six disinterested directors.[2] Such argument on a limited basis thus struck at the very foundation of *233 the Supreme Court's opinion, namely a premise of valid action by a disinterested board of directors as to all options issued under the plan. Plaintiffs further contended in their petition for reargument that the supposedly impartial committee which purportedly granted the options now in issue was in fact appointed by an interested president rather than by a majority of the whole board as required by § 141(c), Title 8 Del. C., such authority having been granted to the president by resolution of the board at a meeting attended by only six allegedly disinterested directors. It is accordingly argued that such options are invalid for an additional and independent reason, namely that they were granted by an invalidly created committee with ostensible plenary powers. If this later contention be true and the option committee here in issue was in fact an improperly created plenary committee within the intendment of § 141(c) of Title 8 Del.C. (the board's functions having pro tanto been purportedly supplanted), it would seem to follow that none of the options involved in this case is technically valid.
In answer to such arguments, defendants contend that it was the board rather than the committee which issued the options and that all board action as to the options in question was validly taken inasmuch as Article III, Section 1 of American's bylaws provides for a minimum quorum of six directors. Their contentions are summarized by the Supreme Court in its opinion on remand as follows: * * * "With respect to the attack made in Point 1 on the validity of the committee created to allocate options, appellants say that the Directors' meeting authorizing the creation of the committee complied with the quorum provisions of the corporate by-laws and, furthermore, that the committee in any event was not empowered to grant options, but only to recommend to the Board the grant of options to employees. Thereafter, the Board in its discretion, and in the exercise of its business judgment, was required to approve the grant of options. Therefore, it is argued, the Options Committee was not the type of committee subject to the provisions of 8 Del.C. § 141(c) which governs the creation of committees authorized to exercise `the powers of the board of directors in the management of the business and affairs of the corporation'". [160 A. 2d 740]
However, because the record in the Supreme Court did not contain a copy of the by-laws of American Airlines, Inc. and was thus deficient in a factual basis for defendants' contentions as to the minimum quorum requirement fixed by the corporate by-laws, and also because the record did not clearly disclose that the board rather than the option committee had actually issued the options under attack (the Court knowing of no proper means of supplementing the record on appeal with such alleged facts), the case was remanded to this Court without reargument with instructions first to examine the corporation's pertinent by-law provisions, and after determining the quorum necessary for board action, to ascertain whether or not the board itself rather than the option committee had in fact issued the options in question. The specific instructions to this Court read as follows: "* * * to determine the facts, including leave to take such discovery proceedings as, in his discretion, shall seem desirable concerning the quorum provisions of the corporate by-laws, and the validity of the grant of the 1950 options to the appellants Smith and Mosier, provided the appellees make application to him for that purpose within ten days of the receipt of this court's mandate, and provided further that if he finds that (1) the quorum requirement of this corporation is a minimum of six Directors; (2) that a valid quorum of Directors was present at the Board meetings of March 15, 1950, June 21, 1950, July 19, 1950 and August 16, 1950, and (3) that the Committee on Allocation of Stock Options was created solely to recommend to the Board for its action the issuance of stock options, and that the Board, itself, approved the issuance of the options, that he shall thereupon vacate the judgment *234 heretofore entered for the plaintiffs and enter judgment for the defendants."
Plaintiffs, having been granted limited discovery on this issue and after other supplementation of the record by both plaintiffs and defendants, now concede that American's by-laws provided for a quorum of[3] six directors at the times of the critical board meetings and that accordingly a quorum was present on March 15, 1950 when the first option plan was approved, as well as on July 19 and August 16, 1950 when the board by resolution adopted the report of the option committee and formally took action on such committee's recommendations. They submit, however, that it is established on the same record that the board meeting of June 21, 1950 was not attended by a valid quorum, a majority of the whole board not being present for the purpose of delegating designated powers of the board (the option committee having been ostensibly granted plenary powers as to options, and not having been established solely to make recommendations), and that although the board "* * * purported to approve the issuance of the options at its meeting of August 16, 1950, its action was unauthorized and contrary to the terms of the Option Plan."
Plaintiffs submit that the record as now supplemented does not support the cumulative posited findings itemized in the Supreme Court's opinion on remand and that judgment for the defendants, Smith and Mosier, accordingly may not be entered. In seeking cancellation of the options still in issue after remand plaintiffs rely on the facts now of record to support a diverse attack, which, according to them, may be successfully followed through on any one of several fronts with the result in each instance that the options here involved must be found to have been invalidly issued. Such attack as broadened and elaborated upon in plaintiffs' briefs, is now not only new but dichotomous inasmuch as it reaches results favorable to plaintiffs' contentions both on the premise of a theory of a delegation of limited managerial powers to the option committee as well as on their original premise that full plenary powers were not effectively delegated under § 141 (c), Title 8 Del.C. I do not think it necessary, however, to dwell at length on all of plaintiffs' ingenious contentions because, as I see it the record now supports the posited findings enumerated in the remanding opinion.
First of all, as plaintiffs now concede, a quorum of directors of American Airlines, Inc. for the transaction of business is and was at the time of the transactions here under attack a minimum of six (Article III, Section 1 of the by-laws).
Secondly, a valid quorum of directors was present at the board meetings of March 15, 1950, June 21, 1950, July 19, 1950, and August 16, 1950. Plaintiffs, as noted earlier, concede the presence of a quorum on three of these dates, but contend that one was not present on June 21, 1950. I cannot accept this contention, however, because I am satisfied that at such meeting, attended by six disinterested directors, the naming of a plenary committee to, in the words of § 141(c) of Title 8 Del. C., "* * * exercise the powers of the board of directors in the management of the business and affairs of the corporation * * *" and to "* * * authorize the seal of the corporation to be affixed to all papers which may require it * * *" was neither contemplated nor accomplished.
At such meeting the president was authorized by resolution "* * * to appoint a Committee of[4] five directors, with full power and authority to determine the persons to whom options on Common Stock shall be granted and the individual amounts *235 and the definitive terms thereof * * *" however, such determinations were by resolution to be "* * * subject to approval as to price and authorization for the issuance of such shares upon report by such Committee, from time to time, of the persons and share amounts allocated for options * * *"
This resolution, in my opinion, did not purport to set up a committee with plenary powers as undoubtedly had been the purpose of the CIT Financial Corporation directors who expressly delegated such powers to an option committee to which it entrusted full responsibility as to an option plan, including the fixing of options prices. See Kaufman v. Shoenberg et al., 33 Del.Ch. 211, 91 A.2d 786.[5] And while, to be sure, the proxy letter to stockholders preliminary to the meeting of May 16, 1950, at which the plan here in issue was approved,[6] speaks of the proposed appointment of a non-participating option committee to determine the optionees and the number of shares to be allocated to each, it is apparent from the papers before me, particularly the minutes of the August 16, 1950 board meeting, that the board of directors here retained its basic managerial power to complete the corporate act of granting options and of thereafter issuing stock to those employees to whom options had been allocated by the committee. Any supposed impartiality of the non-participating option committee was rendered nugatory by the fact that the person who was authorized by corporate resolution to appoint such committee was to become the recipient of the largest number of the options granted, and it was obviously the disinterest of the non-participating, non-employee directors, who later approved the recommendations of the committee, which gave the plan force and provided a basis for the May 13, 1960 opinion of the Supreme Court, 160 A.2d 731.
At the July 19, 1950 directors' meeting, the president as chairman of the meeting announced the names of the five directors he had appointed as members of the option committee. At the August 16, 1950 meeting, Mr. John M. Farley reporting for the option committee "* * * asked that the allocation recommended by the committee be adopted by the Board of Directors." After discussion by the board in the absence of C. R. Smith and O. M. Mosier, the allocation of options for 143,000 shares of stock as recommended by the option committee was unanimously approved by corporate resolution as follows:
"Resolved, that, pursuant to the authority to grant options upon 250,000 shares of authorized but unissued Common Stock voted to the Board of Directors at the annual meeting of the stockholders of the corporation held May 16, 1950, options upon 143,000 shares of authorized but unissued Common Stock be allocated as follows:" There follow in the minutes the list of selected employees and the share allocation made by the committee together with resolutions of the board fixing the option price and approving the form of contract to be used by the corporation in entering into "* * * stock option contracts with those persons who have been allocated stock options at this meeting of the Board of Directors."
The resolution adopted by the stockholders at the May 16, 1950 meeting as to the option plan, to be sure, did approve and authorize a proposal to issue options upon *236 an aggregate of 250,000 shares of American "* * * in the manner and on terms recommended by the Board of Directors as set forth in the Proxy Statement dated March 29, 1950 * * * to be undertaken subject to such implementation, not inconsistent therewith, through detailed terms and conditions of the options or otherwise as may be determined by the Board of Directors or a Committee thereof established for the purpose * * *," however, it appears from the language of the minutes of the June 21, 1950 meeting of the directors noted earlier in this opinion that the committee's power to make determinations was made "* * * subject to approval as to price and authorization for the issuance of such shares upon report by such Committee, from time to time, of the persons and share amounts allocated for options * * *"
Thus, it is apparent that any vagueness in the plan existing at the time of its inception (the original resolution of March 15, 1950 had merely adopted subject to stockholder approval a plan for stock options "* * * to be allocated by a committee of directors who will not participate in the options * * *") was ultimately spelled out so as clearly to place final approval of the issuance of options in the hands of the directors.
Construing the specific instructions of the remanding opinion in the light of both opinions of the Supreme Court, I conclude that the facts of record support the third finding posited by the remanding court. I am satisfied that the option committee here actually served no useful purpose other than to simplify the work of the board[7] as to option grants, the ultimate authority over option grants being reserved to the board. Clearly it was not a committee with statutorily delegated plenary powers over all aspects of an option plan and grants thereunder as was the case in Kaufman v. Shoenberg, supra.
As I read the mandate this ultimate finding coupled with the two made earlier in this opinion compel me to vacate the judgment heretofore entered for plaintiffs and to enter judgment for the defendants, Smith and Mosier.
On notice an order to such effect may be submitted.
NOTES
[1] On December 27, 1960, an order submitted by counsel was filed entering judgment for all defendants other than American Airlines, Inc., C. R. Smith and O. M. Mosier.
[2] While at least eight directors attended all such meetings, two of them at each meeting, namely C. R. Smith, president, and O. M. Mosier, vice president, (who did not participate in discussions of or action on the granting of options) were to be recipients of options. At least six other directors present at each meeting were neither officers nor employees of American Airlines, Inc. and so were ineligible for options.
[3] Article III, Section 1.
[4] Three of these directors, Ames, Farley and Fisher, voted as directors to allocate options at the August 16, 1950 meeting as "recommended" by the committee.
[5] The CIT proxy statement described the proposed option plan as one to be administered, subject to its own terms, under the plenary authority of the option committee; that the determinations of the committee as to the working of the plan would be conclusive, and that the committee would be appointed by the board of directors.
[6] "These new options will not be granted unless authorized by the vote of a majority of the shares represented in person or by proxy and entitled to vote at the annual meeting." (proxy statement for May 16, 1950 annual meeting of American Airlines, Inc.
[7] Three of the board of six which approved the options in issue served on the option committee of five. See note 4, supra.